# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

SARA DISCEPOLO,

       *Plaintiff*,

    v.

U.S. DEPARTMENT OF JUSTICE,

       *Defendant.*

No. 16-cv-2351 (DLF/GMH)

## MEMORANDUM OPINION

Before the Court are the defendant's Renewed Motion for Summary Judgment, Dkt. 43, and the plaintiff's Cross-Motion for Summary Judgment, Dkt. 45.[1]  On November 15, 2018, Magistrate Judge G. Michael Harvey issued a Report and Recommendation, Dkt. 69, to which the plaintiff filed numerous objections, Dkt. 71.  For the reasons that follow, the Court will adopt Judge Harvey's Report and Recommendation in its entirety.  The Court will therefore grant the defendant's Renewed Motion for Summary Judgment and deny as moot the plaintiff's Cross-Motion for Summary Judgment.[2]

---

[1] On May 8, 2018, the Court issued a Memorandum Opinion and Order granting in part and denying in part the defendant's previous Motion for Summary Judgment, Dkt. 16, and denying without prejudice the plaintiff's Cross-Motion for Summary Judgment, Dkt. 18.  *See* Dkt. 41 (adopting Judge Harvey's Report and Recommendation, Dkt. 33).  The Court also issued a decision on January 18, 2019, Dkt. 74, in which it affirmed Judge Harvey's November 15, 2018 Memorandum Opinion and Order, Dkt. 68, denying the plaintiff's motion for discovery, motion to strike, and motion for sanctions.

[2] Because this disposition constitutes a final, appealable decision under 28 U.S.C. § 1291, the Court will also deny as moot the plaintiff's pending Motion for Extension of Time to File 28 U.S.C. § 1292(a)(1) Notice of Appeal or Alternatively Motion for Certification of Final Judgment, Dkt. 47.

## I. BACKGROUND

Plaintiff Sara Discepolo, proceeding pro se, seeks information from the U.S. Department of Justice pursuant to the Freedom of Information Act, 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 522a (collectively, FOIA).  On July 17, 2017, Judge Emmet Sullivan referred this matter to a Magistrate Judge for full case management, and Judge Harvey was assigned to this case.  Judge Harvey's November 15, 2018 Report and Recommendation provides a thorough summary of the facts and procedural history, which the Court adopts and will not repeat here. *See* Dkt. 69 at 2–5.

In brief, the plaintiff submitted two FOIA requests to the U.S. Attorney's Office for the District of Massachusetts (USAO-MA) and one FOIA request to the U.S. Attorney's Office for the District of Connecticut (USAO-CT) on April 17, 2017.  *See* Dkt. 41 at 1–2.  The Court previously described those requests as follows:

> First, the plaintiff requested that USAO-MA produce all documents related to (1) "[a]ny criminal investigation of [the plaintiff] from January 1, 2000 through December 31, 2000 or until said investigation terminated"; (2) any "mention of [the plaintiff's] name in any criminal investigation of any other person from January 1, 2000 through December 31, 2000 or until said investigation terminated"; (3) "[i]nformation reflecting that [the plaintiff] was the subject or the target of any criminal activities occurring from anytime from January 1, 2000 through December 31, 2000"; and (4) the plaintiff's "report in August 2000 of having seen Whitey Bulger in person." Dkt. 18-4 at 7.
> Second, the plaintiff requested that USAO-MA produce all documents related to "[a]ny criminal investigation of [the plaintiff] (or the mention of [the plaintiff's] name in any criminal investigation of any other person) from January 1, 2012 through the present." Dkt. 18-4 at 9.
> Third, the plaintiff requested that USAO-CT produce information related to her communications with an Assistant United States Attorney, David X. Sullivan.  The plaintiff requested "all documents in [USAO-CT's] possession relating in any way" to (1) the plaintiff's "report to Assistant United States Attorney David X. Sullivan in August of 2000 that [the plaintiff] was the target of criminal activities in South Boston, Massachusetts"; and (2) the plaintiff's "report to Assistant United States Attorney David X. Sullivan sometime in August of 2000 that [the plaintiff] had seen Whitey Bulger in person in South Boston, Newton, or the Greater Boston area." Dkt. 18-4 at 12.

*Id.* at 2.  On May 8, 2018, the Court—adopting Judge Harvey's previous Report and Recommendation in its entirety—granted in part and denied in part the defendant's motion for summary judgment.[3]  *Id.* at 15.  Specifically, the Court granted summary judgment for the defendant with respect to the requests submitted to USAO-MA, but it denied summary judgment without prejudice with respect to the request submitted to USAO-CT.  *Id.*

Regarding the request to USAO-CT, the Court reasoned that the office's search of its "CaseView" system might not have identified responsive material because the reports referenced by Discepolo "were not strictly case-related."  *Id.* at 12.  The Court noted that AUSA Sullivan's email would be a "reasonable place to search for responsive documents."  *Id.* (quoting Dkt. 33 at 22).  Thus, the Court adopted Judge Harvey's recommendation that "USAO-CT be instructed to supplement its declaration to fill" a single "gap in its demonstration of the adequacy of its search, either by searching AUSA Sullivan's email or by explaining why such a search is unnecessary."  *Id.* (quoting Dkt. 33 at 22).

Following this instruction, the defendant filed a Renewed Motion for Summary Judgment, Dkt. 43, which it supported with a declaration from AUSA Sullivan describing a search of his email for responsive documents, including the terms used and the email systems searched, *see* Dkt. 43-2, ¶¶ 7–9.  The plaintiff filed an opposition and Cross-Motion for Summary Judgment, Dkt. 45, on July 26, 2018, in which she raised various objections to the adequacy and reasonableness of the agency's search.  That same day, the plaintiff also filed a Motion to Take Discovery, Dkt. 44.  On September 19, 2018, the defendant filed its reply, Dkt.

---

[3] It did so after considering the plaintiff's 37-page filing raising numerous objections to Judge Harvey's report and recommendation, *see* Dkt. 36, and her reply, Dkt. 40, and after granting the plaintiff's motion to submit additional evidence, Dkt. 37, and motion to correct her objections, Dkt. 38.

59, which included supplemental declarations from David Luczynski, an Attorney Advisor to the Executive Office for U.S. Attorneys (EOUSA), Dkt. 59-3, and Elisha Biega, a legal assistant to USAO-CT, Dkt. 59-2.  The plaintiff then sought and was granted leave to file a surreply.  *See* Dkts. 57, 58.  On October 19, 2018, the plaintiff filed her surreply, Dkt. 62, along with a motion to strike the supplemental declarations attached to the defendant's reply and a request that the defendant be sanctioned for filing the declarations, Dkt. 61.

On November 15, 2018, Judge Harvey issued a 15-page Memorandum Opinion and Order, Dkt. 68, denying the plaintiff's motion to take discovery, her motion to strike, and her motion for sanctions.  On November 29, 2018, the plaintiff timely filed 34 objections to Judge Harvey's decision.  Dkt. 70.  On January 18, 2019, the Court resolved those objections and affirmed Judge Harvey's decision in its entirety.  Dkt. 74.

Also on November 15, 2018, Judge Harvey issued a 19-page Report and Recommendation regarding the defendant's Renewed Motion for Summary Judgment and the plaintiff's Cross-Motion for Summary Judgment.  Dkt. 69.  On November 29, 2018, the plaintiff timely filed 38 objections to Judge Harvey's Report and Recommendation.  Dkt. 71.

As the procedural history makes clear, the plaintiff has received extensive judicial process since filing this action in 2016.  Her numerous objections—72 in total—to Judge Harvey's November 15, 2018 opinions mark the latest development in that process.

## II.  LEGAL STANDARDS

Under Local Civil Rule 72.3(b), "[a]ny party may file for consideration by the district judge written objections to the magistrate judge's proposed findings and recommendations . . . within 14 days."  Local Civ. R. 72.3(b).  Proper objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis

for the objection." *Id.*   Pursuant to Local Civil Rule 72.3(c), "a district judge shall make a de novo determination of those portions of a magistrate judge's findings and recommendations to which objection is made."   Local Civ. R. 72.3(c); *see also Means v. District of Columbia*, 999 F. Supp. 2d 128, 132 (D.D.C. 2013) ("District courts must apply a de novo standard of review when considering objections to, or adoption of, a magistrate judge's Report and Recommendation."). But "objections which merely rehash an argument presented and considered by the magistrate judge are not properly objected to and are therefore not entitled to de novo review."   *Hall v. Dep't of Commerce*, No. 16-cv-1619, 2018 WL 2002483, at *2 (D.D.C. Apr. 30, 2018); *see also Shurtleff v. EPA*, 991 F. Supp. 2d 1, 8 (D.D.C. 2013).   The district judge "may accept, reject, or modify, in whole or in part, the findings and recommendations of the magistrate judge, or may recommit the matter to the magistrate judge with instructions."   Local Civ. R. 72.3(c).

In accordance with Local Civil Rule 72.3, the Court must assess the parties' summary judgment motions.   As Judge Harvey and this Court have previously explained, FOIA cases are generally resolved on motions for summary judgment.   *See Brayton v. Off. of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).   The agency has the burden of justifying its response to the FOIA request it received, and the federal court reviews the agency's response de novo.   5 U.S.C. § 552(a).   "To prevail on summary judgment, an agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested, which it can do by submitting [a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched."   *Reporters Comm. for Freedom of Press v. FBI*, 877 F.3d 399, 402 (D.C. Cir. 2017) (internal quotation marks omitted).   Such affidavits or declarations "are accorded a presumption of good

faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks omitted).  And although "an affidavit must explain in reasonable detail the scope and method of the search conducted," it "need not set forth with meticulous documentation the details of an epic search for the requested records." *Reporters Comm.*, 877 F.3d at 404 (internal quotation marks omitted).  In addition, a defendant may seek summary judgment based on searches performed after the inception of litigation in federal court. *See, e.g.*, *Ray v. Fed. Bureau of Prisons*, 811 F. Supp. 2d 245, 247–48, 250 (D.D.C. 2011).

More generally, under Rule 56, a court grants summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A "material" fact is one with the potential to change the substantive outcome of the litigation. *See Liberty Lobby*, 477 U.S. at 248; *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006).  A dispute is "genuine" if a reasonable jury could determine that the evidence warrants a verdict for the nonmoving party. *See Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895.  "If there are no genuine issues of material fact, the moving party is entitled to judgment as a matter of law if the nonmoving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Holcomb*, 433 at 895 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## III.  ANALYSIS

The Court has carefully reviewed each of the plaintiff's objections and has undertaken a de novo review of the entirety of Judge Harvey's thorough Report and Recommendation.  Based on its independent assessment of the record and the parties' cross-motions for summary judgment, the Court finds that the defendant's search was adequate and reasonable.

The Court previously held that the defendant's response to the plaintiff's FOIA request to USAO-CT was deficient in only one respect: its failure to search AUSA Sullivan's email.  Dkt. 41 at 12.  Accordingly, USAO-CT was "instructed to supplement its declaration to fill this gap in its demonstration of the adequacy of its search, either by searching AUSA Sullivan's email or by explaining why such a search is unnecessary."  *Id.* (quoting Dkt. 33 at 22).  The defendant filled this gap by filing a declaration from AUSA Sullivan that describes a search of his Outlook account and two email archive systems using the terms "Sara Discepolo," "South Boston," and "Massachusetts."  Dkt. 43-2, ¶¶ 8–9 (Sullivan Declaration).  The Sullivan declaration reports that these searches produced no responsive records, *id.*, and explains why a search of AUSA Sullivan's paper and electronic files was unnecessary, *id.* ¶ 10.  The declaration further avers that all systems within USAO-CT likely to contain responsive records were searched.  *Id.* ¶ 11.

In addition, the defendant filed supplemental declarations explaining that the email databases searched included emails dating from March 1, 2010 to the present, Dkt. 59-2, ¶¶ 5–6 (Biega Declaration), that a legal assistant also searched the case management system used to track all matters handled by USAO-CT, *id.* ¶¶ 1, 7–9, and that EOUSA did not instruct USAO-CT to limit its search to first-party records or use any exemptions or exclusions to limit the scope of USAO-CT's search, Dkt. 59-3, ¶¶ 6, 8 (Luczynski Declaration).

The searches described are adequate and reasonable.  "There is no requirement that an agency search every record system." *Oglesby v. U.S. Department of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  An agency need only "show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Reporters Comm. for Freedom of Press*, 877 F.3d at 402 (internal quotation marks omitted).  An agency can make this showing "by submitting a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Id.* (alteration adopted, internal quotation marks omitted).  The declarations submitted by the defendant easily satisfy this standard.  Given the scope of the plaintiff's request—which focused on her own reports to AUSA Sullivan, Dkt. 18-4 at 12—it was reasonable for the agency to organize its searches using her name.  Further, the locations and time frames covered by the searches were reasonable in light of the narrow gap identified in the Court's May 8, 2018 ruling—namely, the need to search AUSA Sullivan's email records—and the documents in the defendant's possession.

The plaintiff objects to nearly every detail of Judge Harvey's analysis.  However, several of her 38 objections relate to her motion for discovery and motion to strike.  *See, e.g.*, Dkt. 71 (Objections 3, 34, 37).  Others cover terrain addressed directly, and at length, by Judge Harvey, or seek to relitigate issues already determined by the Court's May 8, 2018 decision.  *See, e.g.*, *id.* (Objections 2, 23–24, 28).  The plaintiff's remaining objections misconstrue Judge Harvey's decision, are beyond the scope of the plaintiff's FOIA request, are contrary to controlling legal authority or the factual record, or are irrelevant to the issues presented.  *See, e.g.*, *id.* (Objections 1, 4–22, 25– 27, 29–33, 35–36, 38).

The Court notes specifically that Judge Harvey did not, as the plaintiff argues, draw a factual inference in favor of the defendant by concluding that the email databases searched were the only databases accessible to the agency, *id.* (Objection 10), or by assuming that the agency used the listed search terms separately and not in a compound search limited to records containing all three terms together, *id.* (Objection 11).  To be sure, as Judge Harvey explained, "all reasonable inferences from the facts in the record must be made in favor of the non-moving party."  Dkt. 69 at 6–7 (citing *Liberty Lobby*, 477 U.S. at 255).  But it was not an "inference" to accept at face value the agency's good-faith averment that it searched "[a]ll systems of records within the USAO-CT likely to contain responsive records."  Dkt. 43-2, ¶ 11; *see also* Dkt. 59-2, ¶¶ 10–12.  And no reasonable juror could infer from this language that the agency declined to search accessible databases covering emails from before 2010.  *See* Dkt. 43-2 ¶¶ 8–9, 11 (describing search of three email databases and declaring that all systems of records likely to contain responsive records were searched).  Likewise, no reasonable juror could interpret AUSA Sullivan's declaration as describing a compound search connecting multiple terms—assuming such a search is even possible in Outlook and the other email databases described.  *See* Dkt. 49-2, ¶ 8.  Indeed, the declaration specifically describes multiple "*sets* of searches" using those terms, *id.* ¶ 9 (emphasis added), and lists each term separately with its own pair of quotation marks, *id.* ¶¶ 8–9.

In short, after reviewing the parties' cross-motions, the parties' briefs, Judge Harvey's Report and Recommendation, the plaintiff's objections thereto, and the entire record in this case, de novo, the Court concludes that Judge Harvey carefully and persuasively applied the correct legal standards, and it now adopts the entirety of Judge Harvey's reasoning and analysis as the Court's own.  The Report and Recommendation is appended below.

**CONCLUSION**

For the foregoing reasons, the Court grants the defendant's Renewed Motion for Summary Judgment, denies as moot the plaintiff's Cross-Motion for Summary Judgment, and denies as moot the plaintiff's Motion of Extension of Time to File 28 U.S.C. § 1292(a)(1) Notice of Appeal or Alternatively Motion for Certification of Final Judgment.  A separate order accompanies this memorandum opinion.


DABNEY L. FRIEDRICH
United States District Judge

January 18, 2018

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SARA DISCEPOLO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No. 16-cv-2351 (DLF/GMH) |
| | ) |
| U.S. DEPARTMENT OF JUSTICE, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## <u>REPORT AND RECOMMENDATION</u>

As Defendant recognizes, "[t]he only issue remaining in this case," which was brought by Plaintiff Sara Discepolo under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, "is the adequacy of the search conducted by the United States Attorney's Office for the District of Connecticut ('USAO-CT') with respect to the email of Assistant United States Attorney David X. Sullivan ('AUSA Sullivan')." ECF No. 43 at 1. Specifically, Defendant's original motion for summary judgment was granted in part and denied in part, with directions for it to "fill[] [the] gap in its demonstration of the adequacy of its search, either by searching AUSA Sullivan's email or by explaining why such a search is unnecessary." ECF No. 41 at 12 (quoting *Discepolo v. U.S. Dep't of Justice*, No. 16-cv-2351 (DLF/GMH), 2018 WL 504655, at *12 (D.D.C. Jan. 19, 2018), *report and recommendation adopted* Memorandum Opinion and Order Adopting Report and Recommendation of Magistrate Judge, *Discepolo v. U.S. Dep't of Justice*, No. 16-cv-2351 (DLF/GMH) (D.D.C. May 8, 2018), ECF No. 41). Defendant has now filed a renewed motion for summary judgment supported by new three declarations, and Plaintiff has filed a cross motion for

summary judgment, both of which are ripe for adjudication.[1]  Because Defendant has demonstrated that its searches for documents responsive to Plaintiff's FOIA requests were adequate, Defendant's renewed motion for summary judgment should be granted and Plaintiff's cross motion for summary judgment should be denied.

## I.    BACKGROUND

The pertinent background of this dispute is laid out in the undersigned's Report and Recommendation from January 19, 2018, on Defendant's original motion for summary judgment (the "January 19 Report and Recommendation"). *See Discepolo*, 2018 WL 504655, at *2–4.  As relevant here, on April 17, 2017, Plaintiff sent requests to the United States Attorney's Office for the District of Massachusetts ("USAO-MA") and to USAO-CT. *Id.* at *2.  The requests to USAO-MA sought documents "concerning criminal investigations in which [Plaintiff] was mentioned as the target, the victim, or otherwise." *Id.*  The requests to USAO-CT sought "all documents in [its] possession relating in any way" to (1) Plaintiff's "report to Assistant United States Attorney David X. Sullivan in August of 2000 that [Plaintiff] was the target of criminal activities in South Boston, Massachusetts," and (2) Plaintiff's "report to Assistant United States Attorney David X. Sullivan sometime in August of 2000 that [Plaintiff] had seen Whitey Bulger"—the organized crime boss successfully prosecuted by USAO-MA in 2013—"in person in South Boston, Newton, or the

---

[1] The following are the most relevant docket submissions for the purposes of these motions: (1) Defendant's renewed motion for summary judgment (ECF No. 43) and the declaration of David X. Sullivan dated June 28, 2018 ("June 2018 Sullivan Declaration") (ECF No. 43-2); (2) Plaintiff's cross-motion for summary judgment and opposition to Defendant's renewed motion for summary judgment and attachments (ECF No. 45 through 45-3; ECF No. 46 through 46-3); (3) Defendant's reply in further support of its renewed motion for summary judgment and opposition to Plaintiff's cross-motion for summary judgment (ECF No. 59; ECF No. 60) and the declarations of Elisha Biega dated Sept. 19, 2018 ("September 2018 Biega Declaration") (ECF No. 59-2; ECF No. 60-2) and of David Luczynski dated Sept. 19, 2018 ("September 2018 Luyczynski Declaration") (ECF No. 59-3; ECF No. 60-3); and (4) Plaintiff's reply in further support of her cross motion for summary judgment and sur-reply in further opposition to Defendant' renewed motion for summary judgment (ECF No. 62; ECF No. 63).

Issued contemporaneously with this Report and Recommendation is a Memorandum Opinion and Order resolving Plaintiff's non-dispositive motions, i.e., her motion to take discovery (ECF No. 44) and motion to strike (ECF No. 61).

Greater Boston area." *Id.* at *2 (alterations in original) (quoting Plaintiff's FOIA requests). In response, "USAO-CT searched for 'Discepolo' and 'Sara Discepolo' in electronic files, searched existing hard files bearing her name, sought additional hard files bearing her name but found none, and quizzed AUSA Sullivan using her name." *Id.* at *10. Although USAO-CT searched for responsive documents in Defendant's case management system CaseView, which "'tracks several types of information including the names of plaintiffs, investigative targets, defendants, when the investigation was opened, and when it was closed,' as well as the location of archived documents," it did not search AUSA Sullivan's email for mentions of Plaintiff. *Id.* at *10–11 & n.9.

Plaintiff raised several arguments in opposition to Defendant's original motion for summary judgment and in support of her own cross motion for summary judgment. Beyond contending that the substantive searches were inadequate, she also argued that (1) Defendant should be deemed to have made admissions as to some of the critical issues in this case because it both failed to respond to Plaintiff's requests for admissions on the relevant questions and improperly asserted that it lacked sufficient knowledge to admit or deny the relevant allegations in its answer; (2) certain declarations submitted in support of Defendant's original motion—including the declaration of Elisha Biega, the legal assistant who performed USAO-CT's searches, and the declaration of David Luczynski, an attorney advisor at the Executive Office for U.S. Attorneys ("EOUSA") who outlined EOUSA's role with respect to Plaintiff's FOIA requests—were deficient because they were based on hearsay, based "on information and belief," or not compliant with 28 U.S.C. § 1746 because not sworn under penalty of perjury; (3) Defendant improperly limited its searches to "systems of records" in contravention of FOIA, which is "in no way limited to records contained within a system of records"; and (4) Defendant was improperly withholding records pursuant to a FOIA exemption. *Id.* at *7–9, 12–13 & n.8. The January 19 Report and Recommendation rejected

each of those arguments,[2] as well as most of Plaintiff's arguments about the inadequacy of Defendant's searches, specifically finding that Defendant's search terms were reasonable and that it had searched most of the appropriate locations. *Id.* at *10–11. However, the undersigned found that, because "Plaintiff's request to USAO-CT sought information regarding reports she reportedly made to AUSA Sullivan that were not strictly case-related," Defendant should have searched AUSA Sullivan's email, as it was reasonable to believe that Plaintiff's reports to him might have been transmitted via email. *Id.* at *12. The January 19 Report and Recommendation therefore recommended allowing Defendant to "supplement its declaration to fill this gap in its demonstration of the adequacy of its search, either by searching AUSA Sullivan's email or by explaining why such a search is unnecessary." *Id.* Quoting those specific words, Judge Friedrich adopted the January 19 Report and Recommendation in full in a May 8, 2018 Memorandum Opinion and Order (the "May 8 Memorandum Opinion"). ECF No. 41 at 12. Judge Friedrich denied Plaintiff's motion for reconsideration of that decision on November 2, 2018. ECF No. 65.

Meanwhile, Defendant filed its renewed motion for summary judgment on June 28, 2018. The renewed motion is supported by a supplemental declaration from AUSA Sullivan (the "Supplemental Sullivan Declaration") stating that, although he does not recall communicating with Plaintiff, in 2018 he searched his email for responsive documents. ECF No. 43-2, ¶¶ 5, 7–9. The declaration describes those searches, including the terms used ("Sara Discepolo," "South Boston," and "Massachusetts") and the email systems searched, and reports that the searches "yielded no responsive records." *Id.*, ¶¶ 8–9. After Plaintiff filed her opposition to Defendant's renewed motion, Defendant further filed supplemental declarations addressing issues raised in the opposition.

---

[2] Plaintiff made similar arguments in a motion to strike (ECF No. 20), which the Court denied in its entirety. *Discepolo v. U.S. Dep't of Justice*, No. 16-cv-2351 (DLF/GMH), 2018 WL 500641 (D.D.C. Jan. 19, 2018).

Ms. Biega, who assisted Mr. Sullivan in performing those searches of his email, supplied an additional declaration (the "Supplemental Biega Declaration") stating, among other things, that the searches "yielded no records." ECF No. 59-2, ¶¶ 4–6. Defendant also filed a supplemental declaration from Mr. Luczynski (the "Supplemental Luczynski Declaration"), who reports, among other things, that EOUSA did not use any FOIA exemption to limit its interpretation of Plaintiff's FOIA requests or to limit the scope of USAO-CT's search for records. ECF No. 59-3, ¶¶ 1, 7–8.

## II.   DISCUSSION

### A.   Legal Standard

FOIA presumes that an informed citizenry is "vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). It was enacted to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny," and generally favors "full agency disclosure." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 360–61 (1976) (quoting *Rose v. Dep't of the Air Force*, 495 F.2d 261, 263 (2d Cir. 1974)). All the same, it incorporates nine exemptions aimed at balancing these ideals with the possibility that "legitimate governmental and private interests could be harmed by release of certain types of information." *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992) (en banc) (quoting *FBI v. Abramson*, 456 U.S. 615, 621 (1982)).

FOIA cases are generally resolved on motions for summary judgment. *Brayton v. Office of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). The agency has the burden of justifying its response to the FOIA request it received, and the federal court reviews its response *de novo*. 5 U.S.C. § 552(a)(4)(B). "A FOIA defendant is entitled to summary judgment if it proves 'beyond

5

material doubt [] that it has conducted a search reasonably calculated to uncover all relevant doc-uments.'" *Cornucopia Inst. v. Agric. Mktg. Serv.*, 312 F. Supp. 3d 85, 90 (D.D.C. 2018) (alteration in original) (quoting *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007)).   In determining whether the agency has shown that "it acted in accordance with the statute, the court may rely on '[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (alteration in original) (quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).   Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).   Moreover, it is well-settled in the D.C. Circuit that a defendant may seek summary judgment based on searches performed after the inception of litiga-tion in federal court. *See, e.g.*,  *People for the Ethical Treatment of Animals, Inc. v. Bureau of Indian Affairs*, 800 F. Supp. 2d 173, 178–79 nn.2–3 (D.D.C. 2011) (stating that position that "pre-litigation searches are the only searches material to the adequacy determination is . . . legally un-supportable" and that courts often require an agency to conduct a more thorough search to remedy an inadequate one); *see also Ray v. Fed. Bureau of Prisons*, 811 F. Supp. 2d 245, 247–48, 250 (D.D.C. 2011) (granting summary judgment for defendant where original FOIA request mishan-dled and search did not commence until after filing of complaint).

More generally, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   In adjudicating

such a motion, all reasonable inferences from the facts in the record must be made in favor of the non-moving party. *Anderson*, 477 U.S. at 255. To prevail, the moving party must show that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To do this, it may cite the record, including "affidavits or declarations." Fed. R. Civ. P. 56(c)(1)(A). Factual assertions made in the moving party's affidavits or declarations may be accepted as true in the absence of contrary assertions made in affidavits, declarations, or documentary evidence submitted by the non-moving party. *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992).

## B.    Defendant's Motion for Summary Judgment

As noted, the Court has already ruled on Defendant's original motion for summary judgment, granting it in large part, but denying it in part to allow USAO-CT to shore up its proof by addressing the search of AUSA Sullivan's email. In response to Defendant's renewed motion for summary judgment, Plaintiff has recycled a number of arguments from her opposition to Defendant's first motion for summary judgment, notwithstanding the fact that those arguments have already been rejected either explicitly or implicitly. The following discussion therefore refers freely to the reasoning of the January 19 Report and Recommendation, and the May 8 Memorandum and Order adopting it, resolving the prior motion for summary judgment.

### 1.    Defendant's Admissions

Plaintiff first argues that Defendant should be deemed to have admitted that responsive records existed because it failed to respond to Plaintiff's requests for admissions[3] and because its answer allegedly improperly stated that it had insufficient knowledge at the time to admit or deny

---

[3] Plaintiff served two sets of requests for admissions on Defendant in January and February 2017. ECF No. 11 at 2. Defendant then moved for a protective order, noting that a Plaintiff must clear a high burden to justify discovery in a FOIA case. *Id.* at 2, 4. Judge Sullivan granted the motion on April 21, 2017. Minute Order dated Apr. 21, 2017.

certain allegations in the complaint.  ECF No. 45-1 at 4–8.  The undersigned recommended reject-

ing these arguments when they were made in opposition to Defendant's original motion for sum-

mary judgment, calling the first "frivolous" because Defendant had been relieved of any duty to

respond to Plaintiff's requests for admissions by the entry of a protective order and finding that

the second failed because Plaintiff had not shown that Defendant had engaged in bad faith or eva-

sive pleading, as is normally required before "the sanction of deeming an allegation as admitted"

is imposed.  *Discepolo*, 2018 WL 504655, at *7.  Judge Friedrich followed that recommendation

and rejected the arguments in her May 18 Memorandum Opinion adopting the January 19 Report

and Recommendation.  ECF NO. 41 at 6–7.  This is now the fifth submission in which Plaintiff

has raised the argument (ECF No. 13 at 6–7; ECF No. 19 at 7–9; ECF No. 36 at 2–5; ECF No. 46-

1 at 4–5; ECF No. 61-1 at 2–5) and it is no more successful this time.

        2.      Plaintiff's Objections to Defendant's Declarations

      Plaintiff makes a number of objections to formal aspects of the supplemental declarations

submitted with Defendant's renewed motion for summary judgment.  These include (1) a sugges-

tion that the declaration of David Luczynski filed in support of Defendant's original motion for

summary judgment (the "First Luczynski Declaration") failed to comply with 17 U.S.C. § 1746,

(2) assertions that the declarations of AUSA Sullivan and Ms. Biega are deficient because neither

is a "supervisory official[] qualified to make an averment of adequate search," and (3) an attempt

to show that Mr. Luczynski is incompetent to testify on the subjects in his declarations and that

his declarations are contradictory and therefore cannot be accorded a presumption of good faith.

ECF No. 31-1; ECF No. 45-1 at 12–14; 20-21; ECF NO. 62 at 16.  These objections fail.

      First, to the extent that the objections target declarations filed in connection with Defend-

ant's original motion for summary judgment, they fall flat because it is not necessary to rely on

any of those original declarations to answer the narrow question presented here regarding the search of AUSA Sullivan's email.  Second, the objection that Mr. Luczynski's prior declaration failed to comply with 28 U.S.C. § 1746 was already rejected in the January 19 Report and Recommendation and the May 8 Memorandum Opinion.  *See Discepolo*, 2018 WL 504655, at *9 n.8; ECF No. 41 at 8.  Similarly, those opinions dismissed Plaintiff's arguments, raised again here (ECF No. 45-1 at 13, 20–21), that declarations detailing the searches performed to identify documents responsive to a FOIA request must be made by officials who supervised rather than performed the searches.  As explained in the January 19 Report and Recommendation, "it is appropriate in a FOIA case to submit a declaration from a person who conducted the search *or* a person who supervised the search."  *Discepolo*, 2018 WL 504655, at *8.  Thus, Plaintiff's renewed attempts to discredit the Supplemental Sullivan Declaration and Supplemental Biega Declaration on this ground fail.

That leaves Plaintiff's arguments that the First Luczynski Declaration and the Supplemental Luczynski Declaration are deficient.  ECF No. 45-1 at 13–14; ECF No. 62 at 13–14.  She asserts that Mr. Luczynski lacks sufficient personal knowledge to testify (1) that EOUSA did not direct USAO-CT's searches for documents and (2) that EOUSA did not use any exemption to limit its interpretation or the FOIA requests at issue or the scope of EOUSA's search.  However, the declarations clearly state that Mr. Luczynski's responsibilities include "acting as liaison with other divisions and offices of DOJ in responding to requests and litigation" pursuant to FOIA, reviewing requests for records located in United States Attorneys' Offices, reviewing searches conducted in response to such requests, and preparing responses regarding FOIA exemptions.  ECF No. 31-1, ¶ 1; ECF No. 59-3, ¶ 1.  He further states that he is familiar with the procedures followed by EOUSA in addressing FOIA requests, including the requests at issue here, and that his declarations are

based on his review of files, his personal knowledge, and information acquired through performance of his duties. ECF NO. 31-1, ¶¶ 2–3; ECF No. 59-3, ¶¶ 2–3. That is sufficient to make him competent to testify that EOUSA does not direct the searches of individual U.S. Attorneys' Offices, but that the U.S. Attorneys' Offices "determine the best way to locate responsive information." ECF No. 31-1, ¶ 6 ECF No. 59-3, ¶ 4. Indeed, Mr. Luczynski asserts that the only instruction EOUSA provides to U.S. Attorneys' Offices is to 'read[] the [FOIA] request carefully and perform[] a search for the specific records sought by the requester." ECF No. 59-3, ¶ 4. That assertion is borne out by the memorandum attached to the Supplemental Sullivan Declaration from EOUSA, which directs USAO-CT to "read the request carefully," "search only for the specific records sought by the requester," and "complete the accompanying forms" when the search is completed.[4] ECF No. 43-2 at 7. Moreover, those assertions, which establish that EOUSA's practice is not to interfere in the manner in which an individual U.S. Attorney's Office conducts its FOIA searches, also support Mr. Luczynski's assertions that "EOUSA has not used any exemption or exclusion to limit its interpretation of [P]laintiff's FOIA request" and that "EOUSA has not used any exemption or exclusion to limit the scope of the USAO-CT's search for records responsive to [P]laintiff's FOIA request." ECF No. 59-3, ¶¶ 7–8.

Plaintiff's attempts to uncover contradictions in the declarations also fizzle. Plaintiff asserts that Ms. Biega's statement in her first declaration (which was submitted in connection with Defendant's original motion for summary judgment) that she "identif[ies], discuss[es], and ship[s]

---

[4] Plaintiff's complaint, repeated throughout her opposition to the renewed motion for summary judgment, that the memorandum limited USAO-CT's search to "first-party records," that is, "records about the Plaintiff as opposed to records that may concern third-parties" (ECF NO. 45-1 at 8) is not accurate. The memorandum states, "Please read the request carefully as it is not a typical first-party request for all records; rather, this request seeks specific documents." ECF No. 43-2 at 7. It is not a reasonable to interpret that sentence as limiting any search to records about Plaintiff, rather than limiting any search to the records specifically requested. In any case, Plaintiff's actual requests *did* seek a specific and limited range of records regarding her reports to AUSA Sullivan and, as discussed both in the January 19 Report and Recommendation and below, focusing the searches on Plaintiff's name was reasonable. *See, e.g.*, *Discepolo*, 2018 WL 504655, at *10.

records as directed by EOUSA" (ECF No. 16-2, ¶ 1) contradicts Mr. Luczynski's assertions that

EOUSA leaves it to the individual U.S. Attorneys' Offices to determine how best to search for

responsive documents.   ECF No. 45-1 at 13.   Specifically, Plaintiff contends that "identification

is part of the search process."   *Id.*   However, the fact that EOUSA "directed" USAO-CT to "iden-

tify . . . records" does not mean, as Plaintiff would have it, that "EOUSA . . . actually conducted

the search."   *Id.*   Indeed, that supposition is directly contradicted by the memorandum discussed

above.   Finally, Plaintiff insists that Mr. Luczynski's assertion that his responsibilities include

"locating responsive records" (ECF No. 31-1, ¶ 1; ECF No. 59-3, ¶ 1) negates his statements that

EOUSA does not guide the searches performed by U.S. Attorneys' Offices.   ECF No. 45-1 at 14.

However, both the First Luczynski Declaration and the Supplemental Luczynski Declaration make

clear that some FOIA requests seek documents held by EOUSA, itself.   ECF No. 31-1, ¶ 1; ECF

No. 59-3, ¶ 1.   The reasonable interpretation of Mr. Lyczynski's statements, then, is that while Mr.

Luczynski might locate responsive records when they are held at EOUSA, he does not do so when

the records are held elsewhere, such as at a U.S. Attorney's Office.

In short, Plaintiff has presented no reason to discount the declarations submitted by De-

fendant in support of its motion.

> 3.   Adequacy of Defendant's Searches

Plaintiff contends that Defendant has not shown that USAO-CT's supplemental searches

of AUSA Sullivan's email were "reasonably calculated to uncover all relevant documents."   *Mor-*

*ley*, 508 F.3d at 1114.   This argument, too, is unsuccessful.

The Supplemental Sullivan Declaration asserts that on January 30, 2018, he and Ms. Biega

searched his Department of Justice ("DOJ") Outlook email account using the search terms "Sara

Discepolo," "South Boston," and "Massachusetts."   ECF No. 43-2, ¶ 8.   Ms. Biega clarifies that

AUSA Sullivan's Outlook account contained all emails sent or received "beginning two years prior to January 30, 2018." ECF No. 59-2, ¶ 4.  Using the same search terms, AUSA Sullivan and Ms. Biega also searched his archived DOJ emails using "USA Mail Search-Proofpoint, which includes emails sent or received on or after March 1, 2015," and the "Legacy IAP email archive," which includes emails sent or received between March 1, 2010, and March 1, 2015.  ECF No. 43-2, ¶ 9; ECF No. 59-2, ¶¶ 5–6.  Both declarants assert that those searches yielded no records.  ECF No. 43-2, ¶¶ 8–9; ECF No. 59-2, ¶¶ 4–6.

The declarations go beyond describing the searches of emails, however.  AUSA Sullivan avers that his paper and electronic files "are organized by the name of a case or investigation." ECF No. 43-2, ¶ 10.  Because he was not involved in any investigation of Mr. Bulger, Sara Discepolo, or criminal activities in South Boston, no paper or electronic files would exist that are responsive to Plaintiff's requests.  *Id.*  Ms. Biega asserts that she searched CaseView in both January 2017 and September 2018 for files including Plaintiff's name in the "witness field" and found nothing.  ECF No. 59-2, ¶¶ 7–9.  She further "made every effort to search the Administrative File Systems located within the USAO-CT that were likely to contain" responsive records, to no avail. *Id.*, ¶¶ 10–11.  Ms. Biega is "not aware of any other locations within USAO-CT where responsive records may be found." *Id.*, ¶ 10.

These searches fulfill Defendant's obligation to perform a reasonable search for responsive documents.  The search terms are designed to capture documents included within Plaintiff's FOIA requests, which sought documents related to her alleged reports to AUSA Sullivan about being a target of criminal activities in South Boston and about seeing Mr. Bulger in that area.  As noted in the January 19 Report and Recommendation, "[a]lthough Plaintiff insists these searches were too narrow"—as she does again here (ECF No. 45-1 at 9, 15)—"it is unclear what further search terms

could have been used" to find responsive information "once the searches using her name failed to bear fruit." *Discepolo*, 2018 WL 504655, at *10. Thus, "Defendant's use of Plaintiff's name to organize its searches was reasonable" and "followed logically from the particular requests Plaintiff submitted."[5] *Id.* at *10, 12. And, indeed, these searches "yielded no records relating to any communication or contact between AUSA Sullivan and an individual named Sara Discepolo." ECF No. 59-2, ¶ 4.

Moreover, the search locations were also reasonable. The May 8 Memorandum Opinion specifically adopted the recommendation in the January 19 Report and Recommendation that "USAO-CT be instructed to supplement its declaration to fill [the] gap in its demonstration of the adequacy of its search, either by searching AUSA Sullivan's email or by explaining why such a search is unnecessary." ECF No. 41 at 12 (quoting *Discepolo*, 2018 WL 504655, at *12). Defendant has now done so, searching AUSA Sullivan's emails, including archived emails back to 2010. ECF No. 43-2, ¶¶ 8–9; ECF No. 59-2, ¶¶ 4–6. Plaintiff complains that the search was inadequate unless the searched emails "reached back to the year 2000." ECF No. 45-1 at 21. But both Ms. Biega and ASUA Sullivan describe searches of two archival email databases, one of which contains the "email communications that were created prior to March 1, 2015," and reached back more than eight years, to 2010. ECF No. ¶ 59-2, ¶¶ 5–6; *see also* ECF No. 43-2, ¶¶ 8–9. The reasonable interpretation is that those databases contained the emails reasonably accessible to

---

[5] Plaintiff's suggestion that the search was impermissibly narrow because focused on "records about . . . Plaintiff as opposed to records that may concern third-parties" should fail. ECF No. 45-1 at 8–11, 14–15. Plaintiff's requests to USAO-CT clearly sought information about reports that she herself made, asking for documents related to "[m]y report to [AUSA Sullivan] . . . that I was the target of criminal activities in South Boston, Massachusetts," and "[m]y report to [AUSA Sullivan] . . . that I had seen Whitey Bulger in person." ECF No. 1 at 7. As Judge Friedrich recently emphasized, Plaintiff's requests involve only reports that she made to law enforcement and not, for example, "information about Bulger's whereabouts." ECF No. 65 at 5. Thus, as noted, the use of her name to organize the searches was sufficient under the statute. Defendant is correct that Plaintiff "is simply being revisionist in arguing that the FOIA request was broader in scope than a request for records relating to reports that she allegedly made to a specific Assistant United States Attorney in the USAO-CT on specific topics." ECF No. 59 at 3.

USAO-CT.  "The agency need not search every record in the system or conduct a perfect search. Nor need the agency produce a document where 'the agency is no longer in possession of the document[] for a reason that is not itself suspect.'"  *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 384 F. Supp. 2d 100, 107 (D.D.C. 2005) (alteration in original) (internal citations omitted) (quoting *SafeCard Servs.*, 926 F.2d at 1201).  In addition, in light of the fact that USAO-CT was ordered to search AUSA Sullivan's email based primarily on the likelihood that Plaintiff had communicated with him by email, *Discepolo*, 2018 WL 504655, at *12, Plaintiff has undercut her argument that a search of emails from the year 2000 would be likely to turn up relevant documents by admitting (for the first time in her opposition to Defendant's renewed motion for summary judgment) that her "reports" to AUSA Sullivan "were made . . . over the telephone, not email." ECF No. 45-1 at 31.

Many of Plaintiff's remaining objections to the adequacy of the search have already been decided.  For example, Plaintiff complains that AUSA Sullivan did not search his paper or electronic files, protests that court filings were excluded from the search, and challenges Ms. Biega's queries of CaseView. ECF NO. 45-1 at 11–12, 22–32; ECF NO. 62 at 2–3.  However, the January 19 Report and Recommendation, which Judge Friedrich adopted in her May 8 Memorandum Opinion, found that USAO-CT's original search comported with the requirements of FOIA "with one exception": USAO-CT needed to search AUSA Sullivan's email or explain why that was unnecessary. *Discepolo*, 2018 WL 504655, at *11–12.  Moreover, searches of AUSA Sullivan's paper or electronic files would not be reasonably likely to yield relevant documents because those files are all case-related, and USAO-CT did not handle any case or investigation involving Plaintiff, Mr. Bulger, or criminal activities in South Boston.  ECF No. 43-2, ¶ 10.

Plaintiff also complains that USAO-CT's searches were "limited to investigative materials within the jurisdiction of Connecticut only," noting that she "resided in a different jurisdiction"— Massachusetts—"at the time of making the reports to [AUSA] Sullivan." (ECF No. 45-1 n.3; ECF No. 62 at 10). There is no reason to believe, however, that USAO-CT had reasonable access to documents from USAO-MA (the only other jurisdiction with any possible connection to Plaintiff's requests). Nor has Plaintiff explained on what basis USAO-CT should be required to search another jurisdiction's files for materials responsive to a request she herself directed to USAO-CT. In any case, the Court already determined that the searches performed in response to her requests to USAO-MA (the only other jurisdiction with any possible connection to Plaintiff's requests) were sufficient. *Discepolo*, 2018 WL 504655, at *10–11. Those searches, like the searches that USAO-CT engaged in, "focused on information about Plaintiff" and also "began[] with variations of Plaintiff's first and last names." *Id.* Thus, there is no reason to believe that, assuming USAO-CT had reasonable access to materials from USAO-MA, any searches it performed using Plaintiff's name would garner more results than did USAO-MA's searches.

Finally, Plaintiff asserts that the searches cannot have been adequate because they were limited to "systems of records," a term that has a specific meaning under the Privacy Act, 5 U.S.C. § 552a(a)(5), denoting "group[s] of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." According to Plaintiff, searching only "systems of records" is inadequate because "[u]nder FOIA . . . , [she] is entitled to a search of all files or locations without reference to how the records are grouped or indexed." ECF No. 45-1 at 17; *see also id.* at 33–36. This argument, too, was resolved against Plaintiff in connection with Defendant's original motion for summary judgment:

> [Defendant's] declarations repeatedly indicate Defendant responded to the requests pursuant to FOIA. More importantly, neither USAO-CT nor USAO-MA actually limited its search only to "systems of records" as defined by the Privacy Act. Rather, USAO-CT searched paper files and also questioned AUSA Sullivan; USAO-MA combed through boxes of hard files as well as questioning members of the prosecution team. Finally, the limitation to searches for Plaintiff's name, as explained above, was not imposed because Defendant performed searches only pursuant to the Privacy Act, but rather followed logically from the particular requests Plaintiff submitted.

*Discepolo*, 2018 WL 504655, at *12 (internal citations to record omitted).  The same is true here.

Moreover, to the extent Defendant limited its searches, it did so based upon the specific directions

provided by the Court—that is, to search of AUSA Sullivan's email based on Plaintiff's name.  It

is thus irrelevant whether the email and archives searched are considered "systems of records" or

not.

Therefore, the undersigned recommends finding that the supplemental searches performed

by USAO-CT complied with the requirements of FOIA.

        3.      Other Objections

Plaintiff argues that the fact that Defendant assigned her requests to its "complex track" for

processing, thus providing it more time to respond to the requests, and yet produced no records

"justifi[es] [an] inference [] that the agency used th[e] extended time to consult with other agencies,

offices or sub-components of the Department of Justice."  ECF No. 45-1 at 33; *see also* ECF No.

62 at 16.  Because "none of the declarations filed in the case give any detail as to any consultations

that took place in this particular case," she asserts that Defendant's motion for summary judgment

must be denied.  ECF No. 45-1 at 33.  The Supplemental Luczynski Declaration asserts that

EOUSA did not consult with any other office or agency regarding Plaintiff's requests.  ECF No.

59-3, ¶ 9.  Plaintiff's hunch that consultation occurred does not undermine this assertion.  *See, e.g.,*

*SafeCard Servs.*, 926 F.2d at 1200 ("[Agency declarations] are accorded a presumption of good

faith, which cannot be rebutted by 'purely speculative claims about the existence and discovera-bility of other documents.'" (quoting *Ground Saucer Watch*, 692 F.2d at 771)). More importantly, Plaintiff has not explained how a more detailed declaration regarding any consultations with other agencies could bear on the question of whether USAO-CT's search of AUSA Sullivan's email was sufficient under the statute.

Plaintiff also hypothesizes that Defendant did not search "for any records it pre-determined would either be exempt or excludable under FOIA" or that it is withholding records subject to a FOIA exclusion. ECF No. 45-1 at 36–38. As noted, the Supplemental Luczynski Declaration explicitly denies the former speculation, stating that EOUSA did not use any exemption or exclu-sion to limit its interpretation Plaintiff's requests or USAO-CT's search for records. ECF No. 59-3, ¶¶ 7–8. Moreover, the Supplemental Biega Declaration asserts that the searches of AUSA Sul-livan's email "yielded no records." ECF No. 59-2, ¶¶ 4–6. Defendant has thus adequately shown that no records are being withheld pursuant to a FOIA exemption.

    4.    Conclusion

As noted, a search under FOIA need not be perfect; it need only be reasonable. *SafeCard Servs.*, 926 F.2d at 1021. Moreover, because "[t]he process of conducting an adequate search for documents requires 'both systemic and case-specific exercises of discretion and administrative judgment and expertise'" it is "hardly an area in which the courts should attempt to micromanage the executive branch." *McKinley v. Bd. of Governors of the Fed. Reserve Sys.*, 849 F. Supp. 2d 47, 56 (D.D.C. 2012) (quoting *Schrecker v. Dep't of Justice*, 349 F.3d 657, 662 (D.C. Cir. 2003)). Here, the Court previously found that the searches performed by USAO-CT in response to Plain-tiff's requests were sufficient under the statute "with one exception," which related exclusively to the failure to search AUSA Sullivan's email. *Discepolo*, 2018 WL 504655, at *11–12. Because

Defendant has now done so and presented "reasonably detailed affidavit[s], setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched," *Valencia-Lucena*, 180 F.3d 321, 326 (D.C. Cir. 1999), the undersigned recommends granting its motion for summary judgment.

C.   **Plaintiff's Cross-Motion for Summary Judgment**

Plaintiff moves for summary judgment on two of Defendant's affirmative defenses raised in its answer.  The first is that this Court lacks subject matter jurisdiction because Defendant "has not improperly withheld information within the meaning of FOIA"; the second is that Plaintiff's requests "implicate certain information that is protected from disclosure by one or more statutory exemptions."  ECF No. 45-1 at 41–43.  Because the undersigned recommends granting Defendant's renewed motion for summary judgment, which would end the case, Plaintiff's motion for summary judgment may be denied as moot.

## III.   CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that Defendant's renewed motion for summary judgment (ECF No. 43) be **GRANTED**, Plaintiff's cross-motion for summary judgment (ECF No. 45) be **DENIED AS MOOT**, and the case be **CLOSED**.

\*      \*      \*      \*      \*

The parties are hereby advised that under the provisions of Local Rule 72.3(b) of the United States District Court for the District of Columbia, any party who objects to the Report and Recommendation must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the report and/or recommendation to which objection is made, and the basis for such objections.  The parties are further advised that failure to file timely objections to the findings and

recommendations set forth in this report may waive their right of appeal from an order of the District Court that adopts such findings and recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985).

Date:  November 15, 2018

Digitally signed by G. Michael Harvey
Date: 2018.11.15
14:36:02 -05'00'

G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE